Local 663, and others, and General Motors, LLC, Arguments not to exceed 15 minutes for Plaintiff, 15 minutes to be shared by Defendants, Mr. Myers for the Appellants. Good morning, Your Honors. May it please the Court, I'd like to reserve three minutes. My name is Ken Myers. I represent the Appellants, who are all former employees of the Guide Corporation, who were subject to an agreement to flow into GM if anything ever happened to Guide. The substance of the case is not before the Court, it's a procedural matter on whether or not they properly exhausted their internal remedies and therefore were or were not timely in getting the actual lawsuit filed. I'd like to try to divvy my arguments up into three sections. One, sort of a micro view of the specifics of the letter writing back and forth, and then I'd like to take a step back and look at the macro view, more of a policy issue of how the UAW Constitution fits into the whole scheme of labor law, and then I'd like to also touch on the state law fraud issue and the preemption that the District Court ruled. So, regarding the specifics. Well, we're basically essentially a statute of limitations problem. Correct, correct, and it's sort of intertwined with the question of exhaustion, because what my clients did was they attempted to exhaust further than the Court ultimately ruled that they were entitled to, and what the Court ruled that they were entitled to. So, they had gone through this grievance process in their local, and then they appealed it up to the International. They didn't make the distinction between the International Executive Board and the International President, and they were given a hearing, which, an appeals hearing, which sort of veers it off into one direction under the Constitution, but then the President sort of took it in another direction and said, I've overruled it, you're done. Now, my clients didn't understand that when he said, you're done, and they made a specific reference to a section in the Constitution, that that triggered their six months, and they should have gone right to court. Their view was, well, I've still got to go to the Public Review Board, and so what Mr. Flatford did was he wrote a letter saying, I want to appeal it to the Public Review Board. He sent it to the... I take it they were after all this had gone on, and when it was, when it was literally after the, what eventually became the statute of limitations had run. After the time had run, right. Correct, correct. So, they received the letter saying, you know, you're done. What's, what's your best case for your position that their failure to triggering of that time limit? Your Honor, because the whole process up to that point had been run through a whole other area of the Constitution, and, and I think if you look at, there's a, an Eighth Circuit Court of Appeals case I just found when I was preparing for this that I think is interesting because it touches on some of the same issues. Stafford versus Ford Motor Company, 835 F. 2nd 1227, and they actually said that the trial court had been too precise with interpreting the Constitution. They said the international, the internal UAW appeals procedures set forth in Article 33 of the Constitution are hardly a model of clarity, and I, and then they go on to talk about the difference between an appeal of a grievance versus an interpretation of a contract, and I think what, what is supposed to happen is you've got lay people who are challenging the Union's decisions, and lay people looking at the language of this Article 33, along with all the other articles in there, can get confused, as can the UAW itself. The Public Review Board, as I pointed out in my brief, hedged on whether or not the President had properly run it through 2B instead of 2A because it had been through the appellate process, so I think what happened with Mr. Flatford was he, he didn't recognize, because it had already gone through this other part of the process, he thought in his mind, I know I have to go to the Public Review Board, I know the next step is the Public Review Board, and, and if you look at the language of, of the original letter from the President, sure, in, in hindsight, it's easy to say, well, that should have been his, his, his known or should have known that he was triggering his six months, but, but if you look at other, and I'm kind of morphing into my macro argument here, if you look at other areas of, of statutory law where there are administrative requirements, such as ERISA or, or Title VII, when you have an administrative process, when that process is done, the, the agency has to state very clearly, here's what's are in the process, and here's your next step of appeal, and here's your deadline, and what the UAW does... You're saying if, if the union doesn't tell you this is the deadline under this rule, then you can go ahead and proceed through these steps, writing letters and so forth? Well, I think it would be better if they did it that way, I'm not, and I, and I think that if this court signaled that, that there was some leeway, that, that there was some responsibility on the part of union officials to make it clearer to their members how to proceed, as opposed to confusing the process, when the union president all of a sudden says, you know, after, after he'd been through this appeals panel process, which steers you toward the public review board, all of a sudden he says, in, in the last line of a letter, you know, this process is closed. Well, does that mean that the process is closed as far as I'm concerned, and you now have to go to the next level of appeal, in other words, a sort of a final appeal of a ruling language, or is it, you're done, go to court? The average layperson shouldn't be expected, as a matter of course, as a matter of law, to know that. When the president says what he said, and the district court found that it was not equivocal in, in the least, right? Well, the district court kind of equivocated on that, because the district court said, well, you've got the October 25th language, but then let's, let's assume that, that it goes to the next step, and the public review board, which officially had no role in this, they were, they're the ultimate appellate level, they said, if it's Article 33, Section 2B, then you're done, but you got to go back and find out. So he went back and found out, and the president then reiterated, yes, that's what I meant, I have to agree with the public review board, but intermingled in all that, which is further confusing, is the fact that Mr. Flatford had filed an appeal letter, but the UAW lost it. This November 7th letter that he wrote, no one acknowledged they got it, even though, you know. The phrase, though, this matter is closed, in that letter. That could, that could mean it's closed, go to court, or, which is what we now know in hindsight they meant, but it also could mean it's closed, take your next level of appeal, which is how he took it, and clearly. It's when you're, when the, when one should reasonably know that the union has abandoned the matter. And who is the one? Well, it says this matter is closed. I mean, it's tough, isn't it? That's, this matter is closed. Well, I think that gets also to my policy argument. The union is supposed to be representing its members. There's another area of the Constitution that says that. So, clearly, there's an area where they part company, where you're challenging one of their decisions, you're parting company, you have to go through this sort of adversarial process, but if you're, the process seems to be designed to discourage and confuse the members as to what their avenues are, and especially if they're not represented by council, and if they are, you know, sort of, I characterize it as sort of had this process started, which is supposed to go through the International Executive Board, it's supposed to end at the Public Review Board. Then he writes this letter out of the, sort of, out of the blue after a hearing saying, I've taken it in this other direction. So, so the average person looking at that said, well, what if he's wrong? What if he, if he ran it through the wrong process? Now, do I take him at face value, even though he's procedurally wrong, he's misinterpreted his own Constitution? Do I take my chances and go to court knowing that they might say, you failed to exhaust? The district court said it doesn't matter if the UA, if the UAW is wrong, and I think that's a recipe for disaster, because if that's the case, if the UAW doesn't have the same, at least the same obligation to be procedurally right that the plaintiffs have, then the UAW can say whatever it wants, because, because, let's take the same scenario, UAW president says you're done, plaintiffs go to court, and then he says, well, but I was wrong. I ran you through the wrong, the wrong section, and you should have exhausted your appeals, and then the district court says, it doesn't matter if the UAW is wrong, it's up to the member to, to, to interpret. That's the thing, isn't it? The burdens on the, the so-called plaintiff here. Right, well, all the burden, and I think, I think that's where it gets into a policy matter is, is, is, shouldn't the burden be somewhat distributed to the people who are, who are supposed to know what that contract says, who are supposed to interpret it, who wrote it, and who still have an ongoing obligation to continue to represent their members? You have a case that says that they need to say, this is a final decision, and your only recourse is to file suit in the federal court, or something like that? No, no, I'm suggesting, your honor, that, that it would be, it would certainly avoid a lot of confusion, it would prevent us from being here in cases like this, because. It would be better for all the members of the union to get that letter. Because there's also cases, and I, and I've litigated a number of these cases that are in the pipeline, where the exact opposite happens. Where, where a member has a grievance, it gets denied, or it gets withdrawn, and they, and they go right to court, and they're then hit with motion to dismiss for failure to exhaust, so. In a situation like this, why, since this is a negotiated document, why isn't the, the, the burden properly placed with the negotiating parties to set out with clarity what the various rights and obligations are? I mean, are we really in the best position to, to allocate those burdens under the backs of this case? I think, your honor, if you look at it from a strictly contractual standpoint, and you, and you look at the concept of third party's beneficiary, there's clearly a procedure set forth in these laws, and in the case law that's come down, to allot for the rights of the, the disaffected, the people who disagree with the two parties that, that negotiated. Second of all, the UAW Constitution is not a collective bargaining agreement. It's not a negotiated document. It's strictly within the UAW, and the, and the, the companies have agreed to abide by those procedures, but. Yeah, but part of this relates to that memorandum of understanding, doesn't it, which is a negotiated document. Well, I think that gets to the merits, your honor, and. And we're not dealing with the merits of that. Right, right. I mean, I'd like to get to that point, and I see my time's running short, but I, well, I'll, I'll save for rebuttal. Thank you very much. Morning, your honors. Thomas Cattell on behalf of General Motors, LLC. This case is not about interpretation of the UAW's Constitution. It's not about misrepresentation, which are the cases that, that plaintiffs cite throughout their, their brief on appeal. There's one issue, Judge Cook, I think, stated it pretty succinctly, and that is whether the plaintiffs knew, or with reasonable diligence, should have known, that the matter was concluded, and the union was going to do nothing further. Okay, but if we, but if we determine that President King lacked the authority to close the appellant's internal union appeal, then what result? I mean. Why President King didn't lack the authority to do that. The unrebutted affidavit of Mr. Isaacson is that the process was appropriately followed, and the, the Constitution was appropriately applied. As this court is held in Millwright Local, in the long case which we cited in our brief, this court is not to substitute, and the courts are not to substitute, its judgment for that of the union in the interpretation of the contract, unless the interpretation is not reasonable or unfair. Well, if the procedure set out in the Constitution is, counsel didn't use the word ambiguous, but doesn't provide clarity to those who are covered by that, then what? It isn't, it isn't, it isn't ambiguous, Your Honor. Because he says that when he says it's, it's closed for the, for the appellant, it's uncertain whether that means it's closed just to this level, and you have to go to the, to the board, or whether you go to court. I understand. If you look at the, President King specifically references that he is denying a contract interpretation by a national department, which is the Department, and he's denying the appeal with respect to that matter, and he refers to Article 33, Section 2B. Article 33, 2B, says that that is the President's decision of the UAW Constitution, that is the President's decision to decide interpretations of contracts involving the National Department. It further says, and interestingly, while plaintiffs quote Article 33, 2B, they leave out the reference to the fact that if you look at that, and if you look at that provision, it says, there shall be no further appeal. All they had to do is look at President King's letter, look at Article 33, 2B, the only provision that applies in this scenario is the interpretation of a contract by a National Department of the UAW, and it says, there shall be no further appeal. Combined with the fact that he says the matter is closed, that should be, should have been the end of it. That's when the statute starts to run. That's what Judge Lightman ruled after extensive argument down below. Now, the union members thought that there was still some avenue of review, right? Well, obviously they did, because they must have been, or they say that they did, because they then, they sent, wrote a letter to the Public Review Board, which is not an avenue available, because there's no further appeal. The Public Review Board then issued its letter on February 23rd, saying there is no review, there is no further appeal of the President's decision. It's a final decision. That was said, was that still within the statute limitations? It was, he, they still missed the statute, and that's what Judge Lightman said. How many days, I don't recall, how many days they had after they received that? Well, they would have had, that was February 23rd, 2013. They would have had to have filed by August. They filed in October. They still had, they still missed it. Exactly, they still missed it. So, and that's what Judge Lightman says, that even, even if you buy their argument that they were confused at that point in time, when the February 23rd letter, any confusion should have been over. The PRB says, look, you don't get an appeal to me. The it's over. They then send another letter to the PRB, back to the President, and that letter basically says, as President King said, as the PRB said, you don't have any further appeal. And as the courts, as Fox versus Parker Hannafin, Dozer versus TWA, in the Reynolds case versus United Steelworkers, they all said further communications doesn't toll the statute. If the appeal process is over, if you've been told it's, if you've been told that the matter is closed, you've been told that the union is not going to do anything further, that's the end of the appeal. And at that point in time, the statute starts to run. And so, even if you give them the benefit of the doubt of the extra time period between October and February, they still missed the statute of limitations. Thank you. Well, let me just ask you this. I also didn't get a chance to get to his preemption argument, so let me just ask you, the plaintiffs rely on the Caterpillar versus Williams case on the preemption issue. Does, how does that case, if we respect to that preemption issue? The preemption issue is really, that's, of the state, of the fraud claim, that's the union's argument, that's the UAW's claim. The claim is only brought against the union, Judge. Thank you. Good morning, Your Honors. I'm John Canzano. I'm representing the co-defendant, UAW, in this matter. I'd just like to address, first of all, that I agree with everything that GM's counsel has said on the issue of statute of limitations, and that one other point I'd just like to reiterate is that the plaintiffs went directly to the President. Their appeal was an appeal to the President under the issue of contract interpretation to the GM UAW Department. And then that brings, when King says this matter is closed pursuant to Article 33, Section 2B, all you have to do is look at Article 33, Section 2B, and there's only one thing in there, it's very obvious, is a list of all these different type of matters, but this, there's only one that says for a matter of contract interpretation, the President's decision is final. The whole issue was that these workers felt that they were supposed to get some benefit because of the priority over other people. They're supposed to flow back, but that issue's already, they've abandoned that issue. They've abandoned that issue. So now they're saying the merits is when they get, when they got back to work, when they, most of them did get hired eventually, but they were at a lower wage, at a two-tier wage. At a certain rate. Yes. So I'd like to address the preemption argument very briefly. The touchstone of complete preemption doctrine is a Supreme Court's decision in Alice Chalmers, where the court held that when resolution of a state law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must be treated as a 301 claim or dismissed as preempted by federal contract law. In Alice Chalmers, the Supreme Court said that in evaluating a state law claim is subject to complete preemption, the court's analysis must focus on whether evaluation of the state law claim is inextricably intertwined with consideration of the terms of the labor contract. I would respectfully submit that you cannot get more inextricably intertwined than this case. This is an easy case for preemption. If you look at their complaint, this is not a case where somebody tried to avoid federal court by artfully pleading and avoiding allegations of breach of contract. This case, they said, what they say was fraud, they also say it was a breach of contract. They say, plaintiffs would have what is known as flowback rights. They were promised that at a meeting when they were ratifying a contract. They had to vote that day on the contract. The promises were not only made verbally at this meeting, but also contained in the MOU, memorandum of understanding, and also contained in the 2003, 2007, 2011. So there's a whole bunch of collective bargaining agreements that they say give them this right and this promise. The verbal promise was that, and the GM and the UA would have breached that promise, plaintiffs were not given their contractually mandated flowback rights. So they're saying that we promised them and we breached the contract, and then they're also saying that the promise was fraud. So that is inextricably intertwined. The only way you can determine whether the representation that they claim is a misrepresentation is true, so you have to look at the contract. If they say we promised them flowback rights, you look at the contract. If there were flowback rights in the contract, then a representation is true. But the only way you can tell is by looking at the contract. And so the point is, if you must reference the contract, that's what you do. I wouldn't say that that's the extent of preemption law, but in this case it's very easy because they explicitly referenced it. Another point, since counsel raised a new case, I would never usually do this because I don't want to surprise anybody, but this is his case, and the case is called COSA v. UAW, and in that case, Judge Duggan found preemption in all... And that was an October 2015 case, and I'm trying to find the site of it. In that case, Judge Duggan found that because there was a duty of representation claim based on the same facts of the fraud claim, and the allegations were almost exactly the same as in this case regarding flowback rights in a ratified plant closing agreement or contract, that then it's preempted by the duty of fair representation, as well as by 301, an alternate argument we made that Judge Below didn't grant. So this case is in your brief? Yeah, it is not in my brief. It is not. It's COSA v. UAW. I've got the site here. I apologize. Here it is. 204 LRRM 3373, 2015 U.S. District, Lexis. One last thing. Judge Below also ruled on a matter of state law under Indiana fraud law that their claim had no merit as a matter of law. They did not appeal that. So even if we lost everything else, that point stands that under Indiana law... Are you talking about this case? Yes. Sorry. That under Indiana law, there is no fraud claim because you can't base a fraud claim on a breach of contract, and that in any event, the misrepresentation, we didn't misrepresent. It was true. We said that the contract had flowback rights, and the contract did have flowback rights as their complaint says. Thank you. Yeah, that's in the district court opinion. Yes. Thank you for your argument. I want to touch on one or two things that opposing counsel said, then I'll try to get to my fraud argument briefly. If you go back to the actual hearing that was held, there was an August 14, 2012 letter, and it's in the record, from Mr. Drudy, the administrative assistant to the president, where he sets the schedule for the hearing, and he says it's pursuant to Article 33, Section 4H. So those were the rules they were going under. Now, that section says that a hearing held by the International Executive Board through its appeals committee, or the international president, shall be held close to locality. So, it's a choice. They went through the appeals committee. That's where this hearing was held. The appeal of that was what Mr. Flatford tried to perfect by going through the mechanism that he thought was the proper one. If the union president is wrong, then I don't think that the plaintiffs should be held responsible for that at the penalty of their whole case. What precisely are you pointing to as wrong? Is this reference, the sending of the letter referencing that Section 4H? Yes, those were the rules that the union set for that hearing. That's the procedural rules, the appeals committee. I didn't see this, but as you read it, it sounds like the purpose of that was to set the venue. It was confirming it's in this location because we say it's there in that section. Right. Only about location. No. You want to bring more into it to say that it clouded the matter. I think it confirms what was stated elsewhere in the Constitution and in these letters, which is the procedure we're going under is the appeals committee procedure, which takes it out of the hands of the president and into the hands... Okay, I'm going to follow your argument, I hope later, but how did that steer the procedure in another direction? You've either got appeals committee, which is the international executive board... You say it's triggered appeals committee. Right. Well, the UAW set it as an appeals committee. They made that decision. By virtue of citing this Section 4H? And by holding the hearing in that way. The whole procedure was a 4H procedure. And 4H, following your logic, once one is in 4H, the whole business of 2B goes by the by, even though it was in the letter? 4H equates with 2A, which takes you to the public review board, as opposed to 2B, which takes you to this. The president gets to make the whole decision and follow it. This argument is in your brief? Yes. Yes. If I may briefly, I know I'm out of time, but if I may briefly touch on the fraud... I'll brief his... One minute, please. You don't have to interpret the contract to know that this was fraud. They were made a promise. They were induced to vote on this plant closing agreement based on a promise of keeping their jobs at GM and at the higher level. That didn't happen, regardless of whether the contract... And this was before the contract was even signed. That's your reliance on Caterpillar v. Williams. And Elanji. Right. So you don't have to... You can refer to the contract as long as you don't have to interpret the contract in order for there not to be preemption. I think we have your argument, Mr. Myers. Thank you for helping the court. And we will consider your matter carefully and issue an opinion in due course. Thank you.